People v Forbes (2025 NY Slip Op 51083(U))

[*1]

People v Forbes

2025 NY Slip Op 51083(U)

Decided on July 11, 2025

Criminal Court Of The City Of New York, Bronx County

Lewis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 11, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Victoria Forbes and Jermaine Wright, Defendants.

Docket No. CR-026898-24BX

People: Bronx County District Attorney's Office by ADA Malik A. Ketcham
Defendant: The Legal Aid Society by Susannah Waldman, Esq. for Victoria Forbes; The Bronx Defenders by Bailey Jackson, Esq. for Jermaine Wright

Daniel M. Lewis, J.

Defendants are charged by information with one count of menacing in the second degree pursuant to PL § 120.14 (1), a class A misdemeanor punishable by 364 days jail, and other related charges, alleging that on October 24, 2024, Defendant Forbes held a knife and Defendant Wright held what appeared to be a gun while they verbally threatened the complaining witness.[FN1]

On April 25, 2025, Defendants moved to dismiss the cases pursuant to CPL §§ 170.30 (1) (e) and 30.30, arguing that the People's certificates of compliance (COC's) were invalid; that the statements of readiness (SOR's) were illusory; and therefore, the People have exceeded the statutorily prescribed speedy trial time of ninety days. Defendants further argue that the People's supplemental COC's (SCOC's) were invalid and the accompanying SOR's were illusory, as certain discoverable items have yet to be disclosed.
For the reasons explained below, Defendants' motions to find the People's COC's invalid are 
GRANTED. Accordingly, Defendants' motions to dismiss the accusatory instruments pursuant to CPL §§ 170.30 (1) (e) and 30.30 are also 
GRANTED.
 PROCEDURAL HISTORY
On October 25, 2024, both Defendants were arraigned. On November 13, 2024, the People filed a supporting deposition off-calendar for both dockets and on November 21, 2024, Defendants were arraigned on the information for both dockets. 
On January 23, 2025, the People filed a COC and SOR on both dockets. On March 6, 2025, the matters were heard in Part AP2 and adjourned to April 4, 2025, for a discovery conference. On April 3, 2025, the People filed a supplemental SCOC on both dockets. On April 4, 2025, a discovery conference was held in Part AP2, Defendants requested the instant motion schedule, and the matters were adjourned to June 16, 2025, for decision.

DISCUSSION
I. Motions to Dismiss the Accusatory Instruments
A motion to dismiss must be granted where the People are not ready for trial within "ninety days of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of more than three months, and none of which is a felony" (CPL §§ 30.30 [1] [b], 170.30 [e]).
These cases commenced on October 25, 2024, with the filing of two misdemeanor complaints in which the highest charged offense was an A misdemeanor, punishable by 364 days in jail (PL § 70.15 [1]). The parties agree that the People had ninety chargeable days from October 25, 2024, to be ready for trial.
At issue is the validity of the two COC's filed on January 23, 2025, which the parties agree was the ninetieth day of chargeable speedy trial time. Without valid COC's, the SOR's that were filed with them would be a nullity and ineffective to stop the "speedy trial" clock (CPL §§ 30.30 [5], 245.50 [3]; People v Bay, 41 NY3d 200, 206 [2023]). Defendants contend that the SOR's filed on January 23, 2025, were illusory because they were not preceded or accompanied by a valid COC. Defendants further contend that the SOR's filed on April 3, 2025, are likewise illusory because they were also not preceded or accompanied by a valid SCOC. Thus, Defendants state that161 days are chargeable to the People. The People argue that the COC's and SCOC's were valid, thus the SOR's were not illusory, and only ninety chargeable days have elapsed.
"[T]he key question in determining if a proper COC has been filed is whether the prosecution has 'exercise[d] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery.'" (Bay, 41 NY3d at 212, quoting CPL § 245.20 [2]). Although "[t]here is no rule of 'strict liability' the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of due diligence" (id. at 212). On a motion challenging the validity of a COC, "the People bear the burden of establishing that they did, in fact, exercise due diligence and make reasonable inquiries prior to filing the initial COC" (id. at 213). "[P]ost-filing disclosure and a supplemental COC cannot compensate for a failure to exercise due diligence before the initial COC is filed" (id. at 212). Thus, the People must demonstrate their efforts to determine the existence of the [*2]belatedly disclosed materials before filing the initial COC (id.; People v Baker, 229 AD3d 1324, 1326 [4th Dept 2024]).
Factors identified by the Court of Appeals as relevant to this analysis include, but are not limited to "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (Bay, 41 NY3d at 212). Moreover, this Court agrees that the "the statute does not require or anticipate a 'perfect prosecutor'" (see People v Erby, 68 Misc 3d 625, 633 [Sup Ct Bronx County 2020]; People v Gonzalez, 68 Misc 3d 1213(A), *1, 3 [Sup Ct Kings County 2020]; People v Georgiopoulos, 71 Misc 3d 1215(A), *2 [Sup Ct Queens County 2021]). Instead, the question of COC validity "calls for a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery" (People v Cooperman, 225 AD3d 1216, 1220 [4th Dept 2024]).
Here, Defendants assert that that the People's COC's and SCOC's were invalid, and the accompanying SOR's thus illusory as demonstrated by the missing or belated disclosures of the following items:
1. DD5's of Det. Cruz, Det. Escudero, and Det. Trainor;
2. NYPD Stop Report for Defendant Wright;
3. ICAD for the 911 call made by the complaining witness for the instant matter;
4. ICAD from Defendant Forbes's criminal complaint against the complaining witness, made on October 29, 2024;
5. Complaint Report from Defendant Forbes's criminal complaint against the complaining witness made on October 29, 2024;
6. Name and adequate contact information for the Administration for Children's Services (ACS) worker who investigated claims made by the complaining witness against Defendant Forbes's on October 19, 2024;
7. Summary of the services received by the complaining witness from the Crimes Victims Assistance Unit (CVAU) of the Bronx DA's Office;
8. Written memo book entries for Police Officer (PO) Castro;
9. Memo book entries for Lt. Bass; and
10. Results of the warrant search for the complaining witness
The People counter that they evinced the good faith, due diligence, and reasonable inquiry required for the COC's validity. This Court disagrees. As further explained below, the People's actions do not reflect those of a reasonably prudent prosecutor in that pertinent discovery was not initially requested with sufficient time for follow-up, and the People did not, in a timely manner, request and disclose items that they should have known existed. Despite the several items of discovery disclosed prior to filing the COC's, a "holistic assessment" of the People's efforts nonetheless shows that they did not exercise the requisite due diligence and reasonable inquiry required for COC validity (see Cooperman, 225 AD3d at 1220).
II. Motions to Invalidate the People's COC's
The Court finds the People's COC's are invalid based on the following missing and belated disclosures:
DD5's of Det. Cruz, Det. Escudero, and Det. Treanor
The People belatedly disclosed the DD5's for Det. Cruz and Det. Escudero on April 2, 2025, and have not disclosed the DD5's for Det. Trainor, items discoverable under CPL § 245.20 (1) (e).
The People argue that they initially did not know the DD5's existed because they were not notified by their automated discovery system, the "ECMS portal," as per usual practices. Nonetheless, the People posit that they showed good faith and due diligence because when Defendant Forbes's attorney notified them on February 26, 2025, that the scratch complaint report identified Det. Cruz and Det. Escudero as officers notified about the case, they investigated this, discovered that a "Negative Debriefing" document was generated, and ultimately disclosed this document. In any event, the People argue that the "Negative Debriefing" document is a nullity because it merely indicates that no detective work was completed on this case.
The People's papers included Det. Escudero's three-page "Negative Debriefing" document, which the Court notes has the appearance of a DD5 and includes a narrative of the incident. Additionally, while this document lists "Debriefing Folder" as the case type for Det. Escudero, it also names Det. Treanor with a case type of "General Investigation." According to defense counsels, Det. Treanor's reports remain outstanding. Importantly, the People offer no explanation for not requesting DD5's or other police paperwork from the Detective Squad as of the COC filing date despite the timely disclosure of other documents that clearly indicate the Detective Squad was involved in the case. 
Nor does the People's estimation of the discovery in question as not useful to either the prosecution or defense relieve the People of their CPL 245.20 burden. For COC validity purposes, evidentiary value is irrelevant. Instead, the analysis turns on whether a reasonable prosecutor should have known these materials existed prior to filing a COC. Here, the Court finds that they should have known. The scratch and finalized complaint report, and at least one [*3]of the two arrest reports noted that detectives were notified about the case. The DD5's for Det. Cruz and Det. Escudero indicate that Det. Treanor also investigated the case. Given the clear indication of NYPD Detective Squad's involvement based on the police paperwork in the People's possession prior to filing their COC's, a reasonable prosecutor should have ascertained the existence of paperwork generated by the assigned detectives. 
NYPD Stop Report for Defendant Wright
Although the parties differ on which date the NYPD Stop Report was provided to Defendants, neither assert that it was provided prior to the People filing their COC's. The NYPD Stop Report is discoverable under CPL § 245.20 (1) (e).
The People did not satisfy their burden of showing due diligence for the delay either in their opposition papers or in their SCOC's. In the former, the People state that Defendants were arrested in different places and at different times, which generated two different sets of discovery. However, at least as far as the paperwork is concerned, even if Defendants had been arrested at the same place and time, two different sets of discovery would still have been generated for each Defendant. In fact, the STOP report was listed in Defendant Wright's arrest report as being generated.
Furthermore, the People do not explain when they knew of the report and what efforts they made to obtain it. Instead, their April 3, 2025, SCOC's, provides a factually unsupported, conclusory statement that the delayed materials, which included the NYPD Stop Report, were unavailable despite diligent efforts. However, the Court notes that, similar to the DD5's, the People did not specifically request this item from the NYPD until Defendant Forbes's attorney notified them of the non-disclosure on February 26, 2025.
Given the reference to the STOP report in the discovery that was timely disclosed, the Court finds that a reasonable prosecutor should have known that the NYPD Stop Report existed and taken steps to ascertain the same.
Summary of Services Received by Complaining Witness from the CVAU
The People belatedly disclosed the summary of services received by the complaining witness from the CVAU of the Bronx DA's Office on April 10, 2025, well after the filing of the January 23, 2025, COC's. These materials are discoverable under CPL § 245.20 (1) (l).
The People concede that the complaining witness was referred to the CVAU on January 3, 2025, before the filing of the COC's. The People offer no explanation as to why these materials were not disclosed until over three months later and why no SCOC has been filed for this disclosure to date.
As the CVAU is part of the Bronx DA's Office, the People were always in actual possession of these materials and therefore a reasonably prudent prosecutor should have known about them. Additionally, as the People offer no justification for the delayed disclosure, it [*4]follows that the People have not established due diligence as to their efforts to acquire and remit these materials.
Handwritten Memo Book for PO Castro
The People have not disclosed the handwritten memo book for PO Castro, the arresting officer. This item is discoverable under CPL § 245.20 (1) (e).
The parties agree that PO Castro's electronic activity log was disclosed to Defendants prior to the COC. However, this entry simply states, "I put the job in my book, it's not loading into my [digital] activity log." Under the facts of this case, a mere placeholder electronic entry cannot suffice for disclosure of the actual memo book. PO Castro is the arresting officer, and as such, a reasonably prudent prosecutor should have known PO Castro would have generated a memo book entry.
Additionally, it cannot be said that the People evinced due diligence for this item. Although the People aver that they have asked PO Castro and the Discovery Liaison "several times" for this document, the materials the People provided do not bear this out. On November 29, 2024, the People requested memo books for seven officers, none of whom was PO Castro. Additionally, PO Castro is not included in the email. On January 22, 2025, the People submitted a general request via email for "officer memo books." Again, PO Castro's name is not included, nor is the email addressed to or cc'd to her. In fact, the record before the Court shows that the People's first email to PO Castro occurred on March 5, 2025, after defense counsel for Defendant Forbes notified the People of the non-disclosure. Given PO Castro's close, direct involvement with the case, the People's lack of effort to directly communicate with her prior to filing their COC, and the eleventh-hour nature of the general request (which still did not include PO Castro), remission of a placeholder electronic log entry does not establish the due diligence required for COC validity.

CONCLUSION
For the reasons above, the Court finds that a reasonable prosecutor should have made reasonable inquiries to ascertain the existence of the above materials. Using a "holistic assessment" of the People's efforts, it cannot be said that due diligence was exercised here. The total amount of discovery was not voluminous, and it was the sort of discovery foreseeable in this type of case.
Therefore, the People's COC's filed on January 23, 2025, are invalid and the SOR's filed on the same date are thus illusory. As the People concede that there are ninety chargeable days as of January 23, 2025, and the People's several SCOC's postdate January 23, 2025, the Court need not rule on the validity of the People's subsequently filed SCOC's and SOR's. The total chargeable time exceeds ninety days, the time permitted by statute. As such, Defendants' motions to dismiss the accusatory instrument pursuant to CPL §§ 30.30 and 173.30 (1) (e) are 
GRANTED.
The foregoing constitutes the decision and order of the Court.
Dated: 11 July 2025
Bronx, New York
DANIEL M. LEWIS, J.C.C.

Footnotes

Footnote 1:The Court assumes a clerical error resulted in both Defendants being charged in two different dockets that have identical charges. Instead, this matter should have proceeded under the same docket number with both Defendants listed.